IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL T. DOYLE, fka MICHAEL T. DINGLEY, <br><br> Plaintiff, <br><br> vs. <br><br> HAWAIIAN CEMENT, a Hawaii General Partnership, et al. <br><br> Defendants. <br> _____ | ) CIVIL NO.  08-00017 JMS/KSC <br> ) <br> ) ORDER GRANTING IN PART AND <br> ) DENYING IN PART DEFENDANTS <br> ) HAWAIIAN CEMENT, KNIFE <br> ) RIVER DAKOTA, INC., MDU <br> ) RESOURCES GROUP, INC., JOHN <br> ) DELONG, MICHAEL COAD, AND <br> ) BRIAN DERAMOS' MOTION TO <br> ) DISMISS FIRST AMENDED <br> ) COMPLAINT AND/OR TO <br> ) COMPEL ARBITRATION <br> ) <br> ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HAWAIIAN CEMENT, KNIFE RIVER DAKOTA, INC., MDU RESOURCES GROUP, INC., JOHN DELONG, MICHAEL COAD, AND BRIAN DERAMOS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND/OR TO COMPEL ARBITRATION**

**I. INTRODUCTION**

On February 12, 2008, Plaintiff Michael Doyle filed an Amended Complaint ("Complaint") against Hawaiian Cement, Knife River Dakota, Inc. ("KRDI"), Knife River Hawaii, Inc. ("KRHI"), MDU Resources Group, Inc. ("MDU"), John Delong, Michael Coad, Brian Deramos, Jon Matsuo, Hawaii Teamsters and Allied Worker Local 996 ("Teamsters"), Melvin Kahele, Ben Ramos, and Liberty Mutual Insurance Co. ("Liberty Mutual") (collectively, "Defendants"), alleging various federal and state law claims stemming from

Plaintiff's employment with, and termination from, Hawaiian Cement. Plaintiff alleges that Defendants engaged in various illegal and unfair practices such as extortion, threats of violence, false representations, slander, and libel in an successful effort to drive him out of Hawaiian Cement.

Currently before the court is Hawaiian Cement, KRDI, KRHI, MDU, Delong, Coad, and Deramos' (collectively, "Moving Defendants") Motion to Dismiss and/or to Compel Arbitration. Based on the following, the court finds that Plaintiff's employment contract with Hawaiian Cement includes a valid agreement to arbitrate disputes arising out of or relating to his employment. As discussed at the May 27, 2008 hearing, the parties will confer regarding the scope of arbitration (*i.e.*, whether the agreement to arbitrate includes all claims and/or all parties) and if necessary, notify the court whether additional briefing is necessary.[1]

## II. **BACKGROUND**

**A.   Factual Background**

The Complaint alleges that Hawaiian Cement hired Plaintiff, a Caucasian male, to oversee, revamp, and revitalize its fleet of ready mix trucks, cement mixer trucks, and heavy equipment, and implement operations throughout

---

[1] Due to the open issues on arbitration, the court declines to rule on the Moving Defendants' Motion to Dismiss for failure to state a claim, and deems the Motion to Dismiss DENIED without prejudice subject to later filing if necessary.

2

the Hawaiian islands.[2]  Compl. ¶¶ 22, 31.  On January 13, 2006, Defendant provided Plaintiff a written employment offer to become its Maintenance/Fleet Manager, *Id.* ¶ 34, beginning on February 15, 2006.  Pl.'s Ex. A.  The letter described Plaintiff's position and benefits:

> Your position reports to the General Manager, Maintenance/Quarry, Oahu Concrete and Aggregate Division, and carries a salary of $85,000 per year.  In addition, you will be included in the Hawaiian Cement Management Incentive Plan at the 10% level.  The position also comes with a Company vehicle.  You will also be eligible for the full range of Hawaiian Cement benefits including medical insurance, dental insurance, group life insurance, and 401K plan, long-term disability, salary continuation and vacation.

*Id.*  The letter then provided that Plaintiff was an at-will employee, and that Hawaiian Cement's policies may change:

> In accepting this offer of employment, it is understood that neither this offer letter, nor any policies, practices, handbooks, or any and all company material creates any guarantees of length of employment.  To the contrary, you will be employed at will and you or the Company may terminate the employment relationship at any time, for any reason or no reason and with or without advance notice.  Further, it is understood that the Company has the right to modify, amend or terminate policies, practices, employee benefit plans and other Company programs within the limits and requirements imposed by law and its interpretation of such policies and employee benefits shall govern.

---

[2] For purposes of this Order, the court treats the allegations of the Complaint as true.

*Id.*

Directly after this paragraph, the letter included the following arbitration requirement:

> Any controversy or claim you or the Company have arising out of or related to your recruitment, employment or termination of employment with the Company included but not limited to any claims under age or other employment discrimination laws, or employee benefit laws shall be subject to, and finally settled by exclusive, final and binding arbitration.

*Id.* If Plaintiff agreed with the conditions outlined in the letter, he was required to acknowledge his acceptance by signing at the bottom. *Id.* Plaintiff signed the letter on January 25, 2006, and Hawaiian Cement received it on February 14, 2006 ("Employment Contract").[3] *Id.*

Plaintiff began his employment on February 21, 2006, and immediately started to overhaul the department. Compl. ¶¶ 37-39. Plaintiff

---

[3] The Complaint does not attach this letter, but specifically identifies and discusses it as an "Employment Contract." *See* Compl. ¶ 34.

In his Opposition, Plaintiff argues that the court should deny the Motion to Dismiss and/or to Compel Arbitration for failure to comply with the Local Rules. Specifically, Plaintiff argues that the Moving Defendants' inclusion of the Employment Contract converted the Motion to Dismiss into one for summary judgment, but included no concise statement of facts as required by Local Rule 56.1. The court rejects this argument. The Moving Defendants seek dismissal and/or an order compelling arbitration. The Employment Contract was submitted in support of their request to compel arbitration, which is separate from their Rule 12(b)(6) Motion. Further, even if the Moving Defendants' inclusion of the Employment Contract converted the motion into one for summary judgment, Plaintiff had the opportunity in his Opposition to present evidence. Accordingly, any failure by the Moving Defendants to comply with the Local Rules did not prejudice Plaintiff in opposing this motion and the court declines to deny the Moving Defendants' Motion on this basis.

became aware of numerous abuses and problems, such as repeated absences of employees, embezzlement, misappropriation of company assets, sabotage, destruction of company equipment, and other wrongful conduct. *Id.* ¶ 41. Plaintiff implemented changes to address these problems, such as holding employees accountable and enforcing work rules and conditions. *Id.* ¶ 44.

Many Hawaiian Cement employees did not appreciate these changes, and Plaintiff alleges that over the next seven months, Defendants and/or their officers, employees, managers, agents, and/or representatives, engaged in a campaign against him of threats, extortion, intimidations, insults, racial epithets, slander, and libel. *Id.* ¶ 45. For example, Teamsters, along with Kahale and Ramos, filed 16 false grievances against actions taken by Plaintiff, including six personally directed against Plaintiff. *Id.* ¶ 61. Kahale, the union president, bragged in the Teamsters newsletter about their grievances against this "renegade supervisor whose abusive behavior has been making their work lives miserable." *Id.* ¶¶ 75-76. In response to these grievances, Hawaiian Cement refused to defend or protect Plaintiff. *Id.* ¶ 65. Instead, Defendants retained Matsuo, an outside consultant, to presumably help Plaintiff deal with these situations. *Id.* ¶ 97 (stating that Matsuo was retained "ostensibly to act as Plaintiff's coach"). Matsuo then

prepared a false report exonerating Hawaiian Cement of any wrongdoing, and placing the blame on Plaintiff. *Id.* ¶¶ 99-102.

Due to this abuse, Plaintiff suffered a break-down and ultimately stopped working. *Id.* ¶ 103. On October 23, 2006, Plaintiff notified Hawaiian Cement of his claim for post-traumatic stress disorder and a back injury. *Id.* ¶ 104. On November 13, 2006, Hawaiian Cement's insurance carrier, Liberty Mutual, denied this claim. *Id.* ¶ 105. Plaintiff also applied for, but did not receive, Temporary Disability Insurance benefits until January 4, 2007. *Id.* ¶¶ 132, 140.

**B.     Procedural Background**

On February 12, 2008, Plaintiff filed his Complaint, which includes 24 counts for violation of Plaintiff's rights under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1960 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) et seq., the Hawaii Civil Rights Act, the Hawaii Discriminatory Employment Practices Act, the Whistleblowers' Protection Act, and other pendant state law claims. Plaintiff states claims against his employer (Hawaiian Cement), Hawaiian Cement's general partners (KRDI and KRHI), the parent company of KRDI and KRHI (MDU), several Hawaiian Cement employees named in both their individual and representative capacities (Delong, Coad, and Deramos), an outside consultant (Matsuo), the union (Teamsters), union

representatives (Kahele and Ramos), and Hawaiian Cement's insurer (Liberty Mutual).

On March 31, 2008, the Moving Defendants filed their Motion to Dismiss and/or to Compel Arbitration. On May 5, 2008, Plaintiff filed his Opposition, and on May 20, 2008, the Moving Defendants filed a Reply. A hearing was held on May 27, 2008.

### III.  STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., which applies to arbitration agreements in contracts involving transactions in interstate commerce, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."[4] 9 U.S.C. § 2. The FAA provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008)

---

[4] During the hearing, the parties agreed that the FAA applies to the arbitration agreement.

("Congress enacted the FAA more than eighty years ago to advance the federal policy favoring arbitration agreements."). "The standard for demonstrating arbitrability is not high. The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (*citing Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)). Indeed, the factual allegations need only "'touch matters' covered by the contract containing the arbitration clause" for arbitration to be triggered. *Id.* (*quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).

In deciding whether to compel arbitration, the court may not review the merits of the underlying dispute. Instead, the court must examine whether: (1) there exists a valid agreement to arbitrate; (2) the parties' dispute falls within their arbitration agreement; and (3) there exists "a defense that would be available to a party seeking to avoid the enforcement of any contract."[5] *Brown v. Dillard's,*

---

[5] Plaintiff does not argue that any defenses are available to him to avoid the enforcement of the Employment Contract. Accordingly, the court assumes that Plaintiff does not have any defenses that would void the Employment Contract, and addresses the first two inquiries only.

*Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005); *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991); *see also Lowden*, 512 F.3d at 1217 ("[T]he court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." (citation and quotation signals omitted)).

If the court concludes that the lawsuit at issue is covered by an enforceable arbitration agreement, and one party to the agreement seeks to enforce the arbitration provision, the court may stay the lawsuit until the arbitration has been completed.  9 U.S.C. § 3.  A stay, however, is not mandatory and the court may alternatively dismiss those claims that are subject to arbitration.  *See Thinket Ink Info. Res. Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)).

## IV.  DISCUSSION

The Moving Defendants argue that all of Plaintiff's claims are subject to arbitration due to the Employment Contract's arbitration clause.  In opposition, Plaintiff argues that the arbitration clause is not supported by bilateral consideration and is therefore unenforceable.  Based on the following, the court finds that the arbitration clause is enforceable, and that Plaintiff's claims against Hawaiian Cement are subject to arbitration.

## A.     The Existence of a Valid Agreement to Arbitrate

In determining whether a valid arbitration agreement exists, the court must apply "state-law principles that govern the formation of contracts." *Lowden*, 512 F.3d at 1217 (*citing First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Reddam v. KPMG LLP*, 457 F.3d 1054, 1059 (9th Cir. 2006) ("We have noted that state law generally applies to the construction of arbitration agreements." (*citing Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998))). Because the Employment Contract governs employment in Hawaii with a Hawaii corporation and there is no specific choice-of-law provision, the court applies Hawaii law.

In order for an arbitration agreement to be enforceable, it "must have the following three elements: (1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration." *Douglass v. Pflueger Haw., Inc.*, 110 Haw. 520, 531, 135 P.3d 129, 140 (2006) (*citing Brown v. KFC Nat'l Mgmt Co.*, 82 Haw. 226, 238-40, 921 P.2d 146, 158-60 (1996)). The court must interpret the terms of the Employment Contract "'according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning.'" *Brown*, 82 Haw. at 240, 921 P.2d at 160 (*quoting Amfac, Inc. v. Waikiki Beachcomber Inv.*

*Co.*, 74 Haw. 85, 108, 839 P.2d 10, 24 (1992)).  The "court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety.  If there is any doubt, the interpretation which most reasonably reflects the intent of the parties must be chosen.'" *Id.* (*quoting Univ. of Haw. Prof'l Assembly v. Univ. of Haw.*, 66 Haw. 214, 219, 659 P.2d 720, 724 (1983)).  Moreover, "[t]here must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract." *Douglass*, 110 Haw. at 531, 135 P.3d at 140.

   The Employment Contract is a two-page letter to Plaintiff, which offers Plaintiff employment, briefly identifies Plaintiff's benefits, and explains that Plaintiff is an at-will employee and that Hawaiian Cement may change its policies and programs.  The Employment Contract then includes the following arbitration requirement:

> Any controversy or claim you or the Company have arising out of or related to your recruitment, employment or termination of employment with the Company included but not limited to any claims under age or other employment discrimination laws, or employee benefit laws shall be subject to, and finally settled by exclusive, final and binding arbitration.

Defs.' Ex. A.  Plaintiff acknowledged his acceptance of these "conditions" by signing the letter on January 25, 2006.  *Id.*

    Analyzing the three elements necessary for an enforceable arbitration agreement, there is no dispute that the Employment Contract is in writing. Further, the language clearly states that any controversy arising out of or related to Plaintiff's employment shall be subject to and settled by exclusive, final and binding arbitration.  The court finds that this language -- using contractual terms such as "any controversy," "shall be subject to," and "final and binding arbitration" -- unambiguously expresses an intent of the parties to submit all employment-related disputes to arbitration.  *See Douglass*, 110 Haw. at 532, 135 P.2d at 141 (noting that provision language of "shall be settled," "final and binding upon the parties," and "the parties agree" on its face reflects mutual assent to arbitrate); *Brown*, 82 Haw. at 240, 921 P.2d at 160.  Moreover, the arbitration clause is supported by bilateral consideration in that both Plaintiff and Hawaiian Cement gave up the right to litigate any disputes in court.  *See Brown*, 82 Haw. at 239-40; 921 P.2d at 159-60 (finding that "the agreement is supported by the bilateral consideration that Drake and KFC would forego their respective rights to a judicial forum . . . in order to benefit from the resulting time and cost savings"). The court therefore finds that the parties' agreement to arbitrate disputes arising out of and/or related to Plaintiff's employment is enforceable.

Plaintiff's arguments for a contrary interpretation of the arbitration clause is unsupported by both the plain language of the Employment Contract and the law.  Plaintiff recites the principle that an arbitration agreement lacks consideration if the employer retains the right to unilaterally revoke it, and argues that Hawaiian Cement retained such right based on the following language in the Employment Contract:

> In accepting this offer of employment, it is understood that neither this offer letter, nor any policies, practices, handbooks, or any and all company material creates any guarantees of length of employment.  To the contrary, you will be employed at will and you or the company may terminate the employment relationship at any time, for any reason or no reason and with or without advance notice.  Further, *it is understood that the company has the right to modify, amend or terminate policies, practices, employee benefit plans and other company programs* within the limits and requirements imposed by law and its interpretation of such policies and employee benefits shall govern.

Defs.' Ex. A (emphasis added).  Plaintiff reasons that because Hawaiian Cement reserved the right to modify, amend, or terminate its policies and practices, this reservation includes the right to modify the agreement to arbitrate.

Plaintiff's construction ignores the unambiguous words of the Employment Contract, and the document as a whole.[6]  *Haw. Med. Ass'n v. Haw.*

---

[6] Because the court finds no ambiguity in the Employment Contract, the court rejects
(continued...)

*Med. Serv. Ass'n*, 113 Haw. 77, 93, 148 P.3d 1179, 1195 (2006) ("[A] contract 'should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause.'" (*quoting Haw. Isles Enters., Inc. v. City & County of Honolulu*, 76 Haw. 487, 491, 879 P.2d 1070, 1074 (1994)). The reservation language is limited in that Hawaiian Cement may "modify, amend or terminate policies, practices, employee benefit plans and other company programs" only. This language follows directly after the Employment Contract's recitation of Plaintiff's benefits and explanation that he is an at-will employee. Accordingly, Hawaiian Cement reserved its right to amend or terminate the programs, policies, and benefits that were briefly outlined in that section of the Employment Contract. In comparison, the arbitration clause is a separate paragraph placed *after* the discussion of benefits and the reservation. By its plain terms, the arbitration clause is not a policy, practice, plan or program, but rather a mandatory statement that the parties "shall" have any employment disputes determined "by exclusive, final and binding arbitration." *See* Defs.' Ex. A. Hawaiian Cement did not reserve any rights to amend or terminate the arbitration agreement.

---

[6](...continued)
Plaintiff's additional argument that the Employment Contract must be interpreted in favor of Plaintiff. *See* Pl.'s Opp'n 8-9.

14

The court also rejects Plaintiff's argument that *Douglass* supports Plaintiff's interpretation of the Employment Contract.  In *Douglass*, the Hawaii Supreme Court rejected an employer's argument that an arbitration provision, contained on page 20 of a 60-page "employee handbook," was enforceable. *Douglass* found that any intent to submit to arbitration was ambiguous because the employee handbook expressly stated that its policies  "did 'not create a contract,' were to be treated as 'guidelines,' and were presented for 'information only.'" *Douglass*, 110 Haw. at 533, 135 P.2d at 143.  *Douglass* further found that even if there was mutual assent, the agreement lacked consideration because the handbook provided that "'[t]he Company has the right to change this handbook at any time and without advance notice,'" meaning that the company could change the right to arbitrate as well. *Id.* at 535, 135 P.3d at 144.  In comparison, the arbitration clause in the Employment Contract was included in a two-page letter, placed after a discussion of Hawaiian Cement's policies and its reservation of its right to change those policies, and signed by Plaintiff to signify his "agreement with the conditions as outlined."  Defs.' Ex. A.  Reading the Employment Contract as a whole, there is no real question that both parties agreed to arbitrate disputes arising out of and/or relating to Plaintiff's employment, and Hawaiian Cement could not unilaterally revoke the arbitration requirement.

In sum, the court finds that the Employment Contract's statement that "[a]ny controversy or claim [Plaintiff] or [Hawaiian Cement] have arising out of or related to . . .[Plaintiff's] employment or termination of employment . . . shall be subject to, and finally settled by exclusive, final and binding arbitration" is enforceable, and requires the parties to arbitrate their disputes arising out of or related to Plaintiff's employment.

## B.  Whether the Parties' Dispute Falls Within the Arbitration Agreement

The Moving Defendants summarily assert that all of Plaintiff's claims fall within the scope of the arbitration agreement, and Plaintiff does not dispute this assertion. From the court's own review of the Complaint, it appears that all of Plaintiff's claims against Hawaiian Cement arise out of and/or relate to Plaintiff's employment with Hawaiian Cement. *See* Compl. ¶ 1 ("This action arises from a scheme by which Plaintiff was driven out of his job and livelihood at Hawaiian Cement by Defendants . . . ."). Such finding, however, does not necessarily mean that Plaintiff's claims against *all* Defendants are subject to arbitration.

The Moving Defendants include not only Hawaiian Cement, but also general partners of Hawaiian Cement (KRDI and KRHI), the parent company of KRDI and KRHI (MDU), and several Hawaiian Cement employees named in both their individual and representational capacities (Delong, Coad, and Deramos).

The Complaint further names as Defendants an outside consultant (Matsuo), the union (Teamsters), union representatives (Kahele and Ramos), and Hawaiian Cement's insurer (Liberty Mutual). None of the Defendants other than Hawaiian Cement is a signatory to the Employment Contract.[7] The court recognizes that in some instances, non-signatories "may be bound by the [arbitration] agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986). However, the parties have not addressed whether claims against Defendants who have not signed the Employment Agreement are subject to arbitration.

As discussed at the hearing, the parties shall meet and confer to discuss whether all claims against all parties are subject to mandatory arbitration and/or whether the parties will otherwise agree to arbitrate this dispute. The parties shall also meet with Magistrate Judge Chang in an attempt to resolve this issue. If the parties are unable to resolve whether all claims against all parties should be arbitrated, the parties will notify the court that they will submit additional briefing discussing whether the arbitration agreement applies to all claims and all defendants.

---

[7] The court recognizes that Coad signed the Employment Contract as Vice President, Administration, for Hawaiian Cement.

## V. **CONCLUSION**

The court HOLDS that the Employment Contract includes an enforceable agreement that Hawaiian Cement and Plaintiff will arbitrate any disputes arising out of or related to Plaintiff's employment with Hawaiian Cement, and that Plaintiff's claims against Hawaiian Cement are subject to arbitration. As discussed above, the parties shall meet and confer regarding whether all claims against all parties should be arbitrated. The court further DENIES the remainder of the Motion without prejudice subject to later filing if necessary.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 29, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Doyle v. Hawaiian Cement, et al.*, Civ. No. 08-00017 JMS/KSC, Order Granting in Part and Denying in Part Defendants Hawaiian Cement, Knife River Dakota, Inc., MDU Resources Group, Inc., John Delong, Michael Coad, and Brian Deramos' Motion to Dismiss First Amended Complaint And/or to Compel Arbitration